UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSEMARY DANIELS,

     Plaintiff,

v.               **DECISION AND ORDER**
                  08-CV-767S

PIONEER CENTRAL SCHOOL DISTRICT,

     Defendant.

## I. INTRODUCTION

Plaintiff Rosemary Daniels brings this action alleging that her former employer, Defendant Pioneer Central School District ("Pioneer") violated her rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). Presently before this Court is Pioneer's Motion for Summary Judgment. (Docket No. 21.) For the following reasons, Pioneer's motion is granted in part and denied in part.

## II. BACKGROUND

### A. Facts

Daniels, a former reading teacher for Pioneer who started in that position in the 1976-1977 school year, was released in 2006. (Defendants' Statement of Facts ("Def's State." ¶ 1, 30; Docket No. 26.)[1] Her claim arises out of that termination and Pioneer's subsequent decisions declining to re-hire her.

As one of two senior reading teachers at Pioneer's Delevan Elementary School, Daniels worked under the auspices of the Academic Intervention Services ("AIS") program.

---

[1]This Court has accepted facts included in Pioneer's Statement of Facts to the extent that they have not been controverted by Daniels. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted).

1

In the spring of 2006, Pioneer restructured the manner in which it provides AIS to students. (Id. ¶ 10.) As part of the restructuring, Pioneer moved the reading instruction program to the classroom, where it was to be managed by the classroom teacher with help from teaching assistants. (Id. ¶ 11.) Consequently, Daniels' position as reading teacher was eliminated. (Id. ¶ 12.) Pioneer claims that it made this decision to save money and provide more effective reading instruction to the students. (Id. ¶¶ 11-12.) Daniels claims that Pioneer's true motive was discriminatory. In support of this charge she points to the following facts.

Since 1979, four teachers,[2] including Daniels, have been granted tenure in Reading, as defined by New York State's Codes, Rules, and Regulations. (Id. ¶¶ 3-4.) One teacher, Sheila Potter was discharged at the same time as Daniels, but because of the following change, it appears that the other two younger teachers, Jacqueline McLean and Carol Bojanowski were not.[3] (Id.) According to Pioneer, sometime in 2004, the Pioneer Faculty Association ("Teachers' Union") questioned whether McLean and Bowjanowski, in addition to inclusion on the Reading tenure list, should also be included on the tenure list for Elementary Education. Pursuant to this request, Pioneer reviewed McLean's and Bowjanowski's file and determined that the Teachers' Union was correct and placed them on the Elementary Education tenure list, while maintaining their status on the Reading list. (Id. ¶ 6.) Consequently, when the reading program was eliminated, McLean and Bowjanowski were retained as elementary teachers, while Daniels was released.

---

[2] A fifth teacher, Pamela Waterman was, at one time, listed on the Reading tenure list. According to Pioneer, this was a mistake that was remedied in April of 2004. (Def's State. ¶ 5.) Daniels does not dispute the mistake with respect to Waterman.

[3] Neither party makes explicit what happened to McLean or Bowjanowski.

Daniels, however, claims that McLean and Bowjanowski were placed on a different tenure list because they were younger and to preserve their jobs at the expense of Daniel's position. (Plaintiff's Statement of Facts ("Pl.'s State." ¶ 7; Docket No. 38.)

Further, sometime in late 2005 or early 2006, the Principal of Delevan Elementary, Jeannine Wagner, conducted a staff meeting where she stated, "If teachers at or near retirement would retire, let us know as soon as possible. It would make room for the bright, young talent coming in at the other end." (Id. ¶ 8.) In the fall of 2005, Wagner conducted another meeting where she stated, "Those of you who are old enough to retire need to think about it now so that we can make room for the new thinking and younger staff." (Christine Parker Affidavit ¶ 5; Docket No. 35-12.) Then, in the spring of 2006, she made a series of comments to Daniels:

> --"Well, aren't you tier one or two?"[4]
> --"Can't you just retire?"
> –"Haven't you been with the school for years?"
> –"Aren't you a thirty-year teacher?"
> –"Can't you just retire?"
> –"You're about ready."

(Pl.'s State. ¶ 8.)

Principal Wagner had similar discussions with Sheila Potter and at least two other senior teachers, Christine Parker and Eileen Kalinowski. (Sheila Potter Affidavit ¶ 6; Docket No. 35-6; Christine Parker Affidavit ¶ 7; Eileen Kalinowski Affidavit ¶ 5; Docket No. 35-14.)

Subsequently, after Daniels was released, she applied for a pre-Kindergarten and Student Intervention Coordinator position with Pioneer. (Def's State. ¶ 43.) In both cases, much younger candidates were hired instead. (Pl.'s State. ¶¶ 12-13.) Further, although

---

[4] A teacher's "tier" relates to her retirement eligibility.

3

Daniels did not apply for it, she claims that a position entitled "Response to Intervention Specialist" ("RTI"), for which Kristen Meir was hired in 2009, encompasses duties similar to those which Daniels previously performed as a reading teacher. (Id. ¶ 11; Reply Declaration of Jeffrey M. Bowen ¶ 23; Docket No. 48.)[5]

This litigation followed.

**B. Procedural History**

Daniels filed a Complaint in this Court on October 15, 2008. (Docket No. 1.) After stipulation and approval by this Court on December 1, 2008, extending its time to respond, Pioneer answered on December 15, 2008. (Docket No. 8.) Pioneer filed its present motion on March 19, 2010. (Docket No. 21.)

### III. DISCUSSION

**A. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if

---

[5]Daniels also believes that Pioneer's superintendent, Jeffrey Bowen, hoped that Daniels would retire and refused to re-hire her. (Ball Declaration ¶ 38; Docket No. 35.) Daniels asserts that, regarding future positions for Daniels, Superintendent Bowen told the Teachers' Union representative, Tom Byers, "[I] didn't have to hire Daniels, and wasn't going to." (Id.) Byers then passed this comment along to Daniels. But without an affidavit from Byers, this Court cannot consider this hearsay statement for the truth of the matter asserted (that Superintendent Bowen actually made the comment). See Fed R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, [and] set out facts that would be admissible in evidence[.]"); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000) ("[W]hile second-hand comments may be relevant, a district court deciding a summary judgment motion must be provided with admissible evidence demonstrating the truth of the non-movant's assertions"). Although the underlying statement, as made by Bowen, would likely be admissible as an admission against interest, as retold by Byers, it is not subject to that exception. See Szarzynski v. Roche Labs., Inc., No. 7 Civ. 6008, 2010 WL 811445, at * 8, n. 12 (W.D.N.Y. Mar. 1, 2010).

it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the employment discrimination context, courts "must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id. However, summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trial – apply no less to discrimination cases than to

5

. . . other areas of litigation." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted); see also Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

**B.     ADEA's Legal Framework**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait [age] actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). But mixed motivation is not enough: "[t]o establish a disparate-treatment claim under the plain language of the ADEA, . . .  a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167,  129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009).

In determining whether a plaintiff has met this burden, courts in this circuit apply the three-step McDonnell Douglas burden shifting scheme. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973); D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007).

First, under this scheme, the plaintiff must bring forth sufficient evidence of a *prima facie* case of discrimination. To achieve this, a plaintiff must show: (1) membership in the protected age group, (2) qualifications for the job at issue; (3) an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an

6

inference of discriminatory intent. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). This "creates a presumption that the employer unlawfully discriminated."James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

Second, if the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory reason for the employee's rejection.

Third, if the defendant meets this burden of production, the presumption drops away, and the plaintiff must bring forth sufficient evidence that the defendant's explanations are pretextual. Fisher v. Vassar Coll., 114 F.3d 1332, 1337-38 (2d Cir.1997).

Here, Pioneer concedes that Daniels has met the first three elements of the *prima facia* case, but argues that she fails the fourth prong – that she has not demonstrated that her release occurred in circumstances giving rise to an inference of discrimination. Even if this Court finds differently, argues Pioneer, Daniels' claim fails under the McDonnell Douglas analysis.

### 1.   *Prima Facie* Case – Fourth Prong

Understanding that the "[t]he burden of proof that must be met to establish a prima facie case is minimal," Hollander v. American Cyanamid Co., 172 F.3d 192, 199 (2d Cir.1999), *abrogated on other grounds by*, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), this Court is satisfied that Daniels has established a *prima facie* case. Standing alone, her claims and proof that a separate reading position, under a different title, was created and filled by a younger teacher and that younger teachers were hired for the two positions for which she applied, establish the necessary inference. See, e.g., D'Cuhna, 479 F.3d at 195 (finding an inference of discrimination where the plaintiff was passed over for jobs and applicants eight

years younger were hired instead.)

### 2. McDonnell Douglas

For its part, Pioneer has unquestionably demonstrated that it had non-discriminatory reasons for releasing Daniels and not rehiring her. It is undisputed that Daniels' whole department, consisting of her and another teacher, was eliminated when Pioneer restructured the AIS program. Both Principal Wagner and Superintendent Bowen state that the move was not made for discriminatory reasons, but rather to provide more effective services and to save money. (Wagner Declaration ¶ 7; Docket No. 22; Bowen Declaration ¶¶ 17, 18; Docket No. 24.) If true, Pioneer's motives are benign under the ADEA. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (holding that the ADEA does not prohibit employers from acting out of concerns for cost).

Further, Pioneer has offered sufficient evidence that it believed that the teachers who it hired instead of Daniels were more qualified and less expensive. (See Bowen Declaration ¶¶ 41-42.) Again, these reasons are unrelated to Daniels' age.

Because Pioneer has offered valid reasons for its actions, Daniels must demonstrate that those reasons were pretextual.

Viewing the evidence in the light most favorable to Daniels, as this Court must, she has met this burden. See Adickes, 398 U.S. at 158-59. According to Daniels and her co-teachers, Principal Wagner made several statements, at varying times, implying that Daniels and others at retirement age should retire. In one of those statements, several teachers remember her saying that "we can make room for new thinking and younger staff." In another, she asks the retirement-age teachers to make room for "bright, young teachers coming in at the other end." According to one senior teacher, Principal Wagner

told her, "I don't know how you'll survive here. Keep in mind you can retire[.]" (Parker Declaration ¶ 7.) While this Court agrees with the District Court of New Jersey that "there is nothing per se discriminatory about an employer asking an employee about retirement plans," see EEOC v. MCI Int'l, Inc., 829 F. Supp. 1438, 1449 (D.N.J. 1993) and while noting that the Supreme Court has stated that "an employee's age is analytically distinct from his years of service," Hazen Paper, 507 U.S. at 611, Wagner's comments were not limited to a discussion of retirement or years of service, but directly referenced age.

Of course, Daniels could have made the statements concerning retirement out of budgetary concerns and the higher pay that senior teachers receive. As noted above, such motives would not violate the ADEA. In other words, her comments could have been made without any animus whatsoever. However, considering her references to "new thinking," "younger staff," and "bright, young talent," it is at least possible that she made those statements with a discriminatory motive. See Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d. Cir. 1989) ("[S]ummary judgment is ordinarily inappropriate where intent and state of mind are at issue.").

She also may have recommended restructuring the AIS program because she thought the new method would be more effective. But, Wagner admitted in deposition that Daniels' reading program was recognized nationally and statewide for its successes and that much of the teaching in the new program was conducted by uncertified teacher assistants, thus raising questions about Wagner's true beliefs concerning the effectiveness of the new program. In fact, over Pioneer's objection, Wagner admitted that the new

program was *not* more effective.[6]

Summary judgment is thus improper with such conflicting interpretations of Wagner's intent. See id.

Further, there is no dispute that Wagner recommended to Superintendent Bowen, who recommended to the Board of Education, that the AIS program be restructured, which resulted in the elimination of two senior teacher's jobs, including Daniels'. Combining Wagner's comments with this recommendation, Daniels has provided enough circumstantial evidence to withstand summary judgment.[7]

---

[6] At Wagner's deposition, the exchange went as follows:
    Q. (Daniels' Counsel): Do you think the AIS program after you implemented your changes in June 2006 was more effective?
    A. (Wagner): Yes.
    Q. (Daniels' Counsel): So I'm going to ask my previous question again. Do you think it was more effective to have teaching assistants without associate degrees administering the AIS lessons over a certified reading teacher?
    Mr. Brown: Objection. You can answer.
    A. (Wagner): More effective, no.
(Brown Reply Declaration ¶ 6.)
    Pioneer objects on two grounds: that the question had already been asked and answered and that the question was not based in fact. This Court finds neither ground compelling. First, this Court finds that the truth seeking goal of depositions outweighs any undue harassment or manipulation that Wagner suffered in answering a similar question twice. The question was framed in a different manner, with more detail and background from which Wagner could draw when answering. As such, it was permissible. See Federal Rule of Evidence 611(a) ("The court should exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make those procedures effective for determining truth . . . and protect witnesses from harassment or undue embarrassment.")
    Second, Daniels had sufficiently established the factual grounds for the question, rendering Pioneer's second argument unpersuasive. Although the parties quibble over Daniels' counsel's characterization of the new program, her statement was not without any basis in fact.

[7] In opposing Pioneer's motion, Daniels relies on what she perceives to be an intentionally deceitful and discriminatory act to add McLean and Bowjanowski, both younger teachers, to the Elementary Education tenure lists in an effort to preserve their jobs when the AIS program was changed. But Superintendent Bowen, by declaration, states that the changes were made in 2004, well before the decision to restructure the AIS program. (Bowen Reply Declaration ¶ 2.) More importantly, Superintendent Bowen notes that the changes were made pursuant to a request from Daniels' own Teacher's Union. (Id.) Finally, Pioneer has demonstrated, by referencing the appointment letters and relevant School Board minutes, that McLean and Bowjanowski properly belonged on the Elementary Education list. (Docket No. 34-2, Exhibits B, C.) Daniels offers no evidence to contradict this information. Thus, even for summary judgment purposes, Daniels has failed establish that this action was related to any alleged age-based

10

Pioneer notes that the School Board had final authority to eliminate Daniels' position, not Wagner, and that "remarks made by someone other than the person who made the decision adversely affecting the plaintiff have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007). Although Wagner may not have been the person who made the ultimate decision to eliminate Daniels' position, a jury could infer from the evidence that Wagner had substantial input in the decision-making process. In fact, Wagner admits that she recommended the removal of the position to Superintendent Bowen, who passed on that recommendation to the School Board, who had final authority. (See Brown Reply Declaration, Exhibit A, pp. 91-93; Docket No. 47-2.) Given such a connection, her comments are relevant to determining whether the decision to terminate Daniels was motivated by Wagner's alleged age-based animus. See, e.g., Owens v. New York City Housing Auth., 934 F.2d 405, 410 (2d Cir. 1991) (finding that statements made by individuals with "substantial influence" over plaintiff's employment raise a genuine issue of fact on the issue of pretext); see also Weber v. Parfums Givenchy, Inc., 49 F.Supp. 2d 343, 361-62 (S.D.N.Y. 1999) (collecting cases that find likewise).

Moreover, there is no dispute that, in 2009, Pioneer hired a RTI Specialist whose duties, *inter alia*, include specialized reading services. Daniels claims that this position is different "in name only" from the one she previously held. Pioneer argues that the RTI position is very different and that it required New York State Certification in Special

---

discrimination.

11

Education, which Daniels does not have. However, it is clear that these positions share at least some duties, (see RTI Job Description; Docket No. 48-2) and considering the evidence in the light most favorable to Daniels, such similarities serve to defeat summary judgment. Significantly, it is unclear whether this was a position already in existence when Daniels was released or whether it was newly created after her departure. If the latter is true, such a fact may undermine Pioneer's claim that it dissolved Daniels' position out of budgetary and efficiency concerns, since it created a new, similar position, with its incumbent costs, only a few years later. As the moving party, it is Pioneer's burden to demonstrate otherwise. It has not. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.").

As a result of the foregoing, Pioneer's motion for summary judgment on Daniels' first cause of action is denied.

**C.  Retaliation and Punitive Damages**

Daniels also brings a claim for retaliation in violation of the ADEA. To sustain such a claim, a plaintiff must show: (1) that she participated in a protected activity; (2) that the employer was aware of plaintiff's protected activity (3) that the employer took an adverse employment action against the plaintiff; and (4) that there was a casual connection between the protected activity and the adverse employment action. See Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 227 (S.D.N.Y.2010) (citing McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)). In her complaint, Daniels asserts that she "complained to [Pioneer] that she believed she and her colleagues had been terminated because of their age." (Complaint ¶ 22; Docket No. 1.) Yet, Daniels provides

no factual support for this charge and does not even raise any arguments to this end in her memorandum of law. Instead, she now asserts that she complained to the Teacher's Union. But Daniels does not bring forth any evidence that Pioneer was aware of this complaint or that it treated her adversely in response to it. Therefore, Pioneer's motion regarding Daniels' second cause of action – alleging retaliation in violation of the ADEA – is granted.

Pioneer also seeks dismissal of the section of Daniels' complaint that seeks punitive damages. As a matter of law, punitive damages are not available under the ADEA. <u>Johnson v. Al Tech Specialties Steel Corp.</u>, 731 F.2d 143, 147 (2d Cir.1984); <u>Townsend v. Exch. Ins. Co.</u>, 196 F. Supp. 2d 300 (W.D.N.Y. 2002). Thus, Pioneer's motion is granted on this ground.

### IV. CONCLUSION

For the reasons discussed above, Pioneer's motion is denied with respect to Daniels' first cause of action and granted with respect to her second cause of action and her claim for punitive damages.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 21) is GRANTED in part and DENIED in part.

Dated: December 30, 2011
       Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                       Chief Judge
                               United States District Court