UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ROSEMARY DANIELS,

           Plaintiff,

v.                                        **DECISION AND ORDER**
                                                        08-CV-767S

PIONEER CENTRAL SCHOOL DISTRICT,

           Defendant.
───────────────────────────────

## I. INTRODUCTION

In this action, Plaintiff Rosemary Daniels alleges that her former employer, Defendant Pioneer Central School District ("Pioneer"), violated her rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

Seeking to dismiss the claim in its entirety, Pioneer moved for summary judgment on March 19, 2010. This Court resolved that motion on January 6, 2012 when it issued a Decision and Order granting in part and denying in part Pioneer's motion. (Docket No. 51.) Pioneer now moves for reconsideration of that decision. (Docket No. 52.) For the following reasons, Pioneer's motion is denied.

## II. BACKGROUND

**A.**    **Facts**

The full relevant factual history is spelled out in this Court's January 6, 2012 Decision and Order. As it applies to this motion, it is sufficient to note that before Daniels' position was eliminated in 2006, she was a senior, nationally-recognized reading teacher in the Pioneer school district. In late 2005 and early 2006, her immediate supervisor and the principal of her school, Jeannine Wagner, made certain comments to Daniels and other

1

senior teachers regarding the need to make room for "younger staff," "new thinking," and "bright young teachers coming in at the other end." (Christine Parker Affidavit, ¶ 5; Docket No. 35-12; Plaintiff's Statement, ¶ 8; Docket No. 38.) She also seemingly encouraged Daniels to retire. (Plaintiff's Statement, ¶ 8.) Wagner also admitted that she was the sole person involved in making the decision to restructure the reading program, which directly resulted in the elimination of Daniels' job. (Wagner Deposition, p. 38, attached as Exhibit N to Ball Declaration; Docket No. 40.)

B.   **Procedural History**

Daniels filed a Complaint in this Court on October 15, 2008. (Docket No. 1.) After stipulation and approval by this Court on December 1, 2008, extending its time to respond, Pioneer answered on December 15, 2008. (Docket No. 8.) Pioneer filed its motion for summary judgment on March 19, 2010. (Docket No. 21.) After this Court's Decision and Order on January 6, 2012, Pioneer moved for reconsideration on February 3, 2012. Briefing on that motion concluded on March 23, 2012, at which time this Court took the motion under consideration.

### III. DISCUSSION

A.   **Motion for Reconsideration Standard**

Pioneer moves for reconsideration under Fed. R. Civ. P. 59(e). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). While district courts may alter or amend judgment "to correct a clear error of law or prevent manifest injustice,"

Munafo v. Metropolitan Transportation Authority, 381 F.3d 99, 105 (2d Cir. 2004), reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion, see United States v. Gross, No. 98–CR–0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Finally, relief under this provision lies within the sound discretion of the court. Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 150 (2d Cir. 2008).

**B.     ADEA Standard**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait [age] actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). But mixed motivation is not enough: "[t]o establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009).

**C.     Cat's Paw**

Pioneer argues that this Court "erroneously applied the cat's paw theory to Daniels' age discrimination claim." (Pioneer's Memorandum in Support of Reconsideration, p. 3; Docket No. 52-1) (original capitalized). In employment law, the phrase "cat's paw" evokes a scenario where an unoffending decision maker unwittingly bases an adverse employment

3

action on the unlawfully tainted animus of a lower-level employee.[1] In other words, it allows a plaintiff to hold her employer liable for the age-based animus of a supervisor who was not directly responsible for making the adverse employment action. This Court found that given the connection between Wager's recommendation to eliminate the program and Superintendent Jeffrey Bowen's ultimate decision to do so, Wagner's "comments are relevant to determining whether the decision to terminate Daniels was motivated by Wagner's alleged age-based animus. See, e.g., Owens v. N.Y.C. Hous. Auth., 934 F.2d 405, 410 (2d Cir. 1991) (finding that statements made by individuals with "substantial influence" over plaintiff's employment raise a genuine issue of fact on the issue of pretext); see also Weber v. Parfums Givenchy, Inc., 49 F.Supp. 2d 343, 361-62 (S.D.N.Y. 1999) (collecting cases that find likewise)."[2] (Decision and Order, p. 11.)

Pioneer argues that two recent cases from the Seventh and Tenth Circuits, Simmons v. Sykes Enterprises, 647 F.3d 943, 949 (10th Cir. 2011) and Lindsey v. Walgreen Co., 615 F.3d 873 (7th Cir. 2010), compel a result different than that reached by this Court. This Court finds differently.

---

[1] Its origin dates back to an Aesop fable, "The Monkey and The Cat." See "The Monkey and the Cat," Aesopica: Aesop's Fables in English, Latin & Greek, at http://mythfolklore.net/aesopica/milowinter/61.htm. "In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from a fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." Staub v. Proctor Hosp., 562 U.S. ----, 131 S. Ct. 1186, 1190 n. 1, 179 L. Ed. 2d 144 (2011). The term "cat's paw" has come to represent any unwitting, adverse action performed at the will of another. The moral of the fable, however, is that the flatterer often harbors a selfish intent.

[2] Although the Board of Education made the final determination to eliminate Daniels' position, Superintendent Bowen "may himself be deemed the 'final decisionmaker with respect to personnel [decisions],' because 'his recommendations are essentially those of the governmental body.'" See Nagle v. Marron, 663 F.3d 100, 117 (2d Cir. 2011) (quoting Hamilton v. Montgomery Cnty. Bd. of Educ., 122 F. Supp. 2d 1273, 1289 (M.D. Ala. 2000)).

It should be noted that the Second Circuit has neither accepted nor rejected the cat's paw theory of liability as it applies to ADEA claims. See Nagle, 663 F.3d at 118. The Second Circuit and districts courts within the Circuit have, however, recognized the validity of the theory of subordinate bias in employment discrimination cases. See Saviano v. Town of Westport, 3:04-cv-522, 2011 WL 4561184, at *7 n. 15 (D.Conn. Sept. 30, 2011) (noting that while the Second Circuit has not formally recognized the "cat's paw" theory, it has "held that bias at any stage of a decision process can taint the ultimate decision in violation of Title VII"); Bickerstaff v. Cassar Coll., 196 F.3d 435 (2d Cir. 1999). The Supreme Court has also recently indicated its approval of the theory as it applies to employment discrimination in the context of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(c). Staub, 131 S. Ct. 1186.

Pioneer seeks to distinguish these cases, arguing that under the ADEA's "but-for" causation requirement, a plaintiff is required to prove "more than what must ordinarily be proved under a [] Title VII or USERRA action" where causation may be found under the less stringent "motivating factor" test. See Simmons, 647 F.3d at 949; see also Gross, 129 S. Ct. at 2350-51 (articulating the "but-for" standard for ADEA claims).

As an initial matter, it is significant that Pioneer has cited, and this Court could find, no cases, in any circuit, where a court has found that the cat's paw theory could not be applied to ADEA claims. See, e.g., Marcus v. PQ Corp., Nos. 11-2009, 11-2066, 2012 WL 149802, at *3 (3rd. Cir. Jan. 19, 2012) ("We do not understand Staub to bar the application of a cat's paw theory in an ADEA case.") Herbert v. Nat'l Amusements, Inc., No. 3:08cv1945 (VLB), 2012 WL 201758, at *2 (D. Conn. Jan. 23, 2012) ("[T]he Court sees no reason why the analysis in Staubs [sic] regarding subordinate bias cannot be reconciled

5

with Gross's but-for causation standard."). Even the two cases principally relied on by Pioneer do not find that the theory is inapplicable to ADEA cases.

Pioneer emphasizes the distinction between the "mixed-motive" test under the USERRA and the "but for" test under the ADEA. But this Court's Decision remains unchanged because it did not apply the cat's paw theory under the "mixed-motive" standard. Rather, this Court found that a jury could find that Principal Wagner's alleged animus was a "but-for" cause of Superintendent Bowen's decision to eliminate the program. As stated by the Tenth Circuit, cat's paw liability is not foreclosed in an ADEA suit; instead, the court "must still determine whether [the plaintiff's] age was a 'but-for' cause of her termination by asking whether the [decision-maker] would have fired [the plaintiff] but for [the subordinates'] alleged bias." Simmons, 647 F.3d at 950. Here, considering that Principal Wagner admitted she was solely responsible for recommending to Superintendent Bowen that the program be restructured, a jury could conclude that Daniels would have kept her job but for that recommendation. In other words, without that recommendation, which came from the principal of Daniels' school and her closest administrator, the position may not have been eliminated. Indeed, Principal Wagner was certain that Daniels would be dismissed as early as February 2006, long before Superintendent Bowen made the pertinent recommendation to the Board.[3] (Wagner

---

[3] In its Reply Memorandum in Support of Reconsideration, Pioneer argues that Wagner was not responsible for the elimination of Daniels' position because the idea to restructure the reading program was first advanced (and later struck down) in early 2005, before Wagner became principal. But this directly contradicts Wagner's own testimony to the contrary (see *supra*, p. 1), creating a triable issue of fact. Further, to the extent that Pioneer is suggesting that this fact also indicates that the decision to eliminate Daniels' position was not made for discriminatory reasons, that argument is unpersuasive for two reasons. First, Wagner could still have acted with discriminatory intent even if the idea to restructure the program was not initially hers. Second, it is improperly made at this stage of the litigation: It is well-settled that "[a] party may not, on a motion for [reconsideration], raise an argument for the first time." Image Processing Techs., LLC v. Canon Inc., No. CV 10–3867(SJF)(ETB) (quoting Church of Scientology

6

Deposition, pp. 81-82.) This is sufficient under the Gross "but-for" test. See Simmons, 647 F.3d at 950; Herbert, 2012 WL 201758, at *2.

Moreover, the new cases cited by Pioneer do not compel a different result simply because they resulted in judgments in the employer's favor. In each case, substantial evidence existed demonstrating that the plaintiff was dismissed for a non-discriminatory reason. In Lindsay, the plaintiff had undisputedly violated her employer's policy regarding procedures for the distribution of prescriptions. See 615 F.3d at 876 ("[S]ubstantial, undisputed evidence in the record supports Walgreens' assertion that it fired Lindsey not because of her age but because she violated company policy."). Likewise, in Simmons, the evidence unequivocally demonstrated that the plaintiff was dismissed because of violations of company policy. See 647 F.3d at 950. In fact, in that case, another employee was also dismissed for the same violation despite the absence of any animus aimed at her. Id.

No such compelling evidence exists in this case. To the contrary, Principal Wagner even admitted that the new, restructured reading program was less effective than it was under Daniels. (Brown Reply Declaration, ¶ 6; Docket No. 47.) Although Pioneer does proffer non-discriminatory reasons for the elimination of Daniels' position, the evidence stems mostly from *post-hoc* statements from interested parties and is far less compelling than that in Lindsay and Simmons. Further, this Court has already found that Daniels has offered sufficient evidence, overcoming Pioneer's motion for summary judgment, to demonstrate that those reasons were pretextual. Nothing warranting reconsideration is

---

Int'l v. Time Warner, Inc., No. 92 Civ. 3024 (PKL), 1997 WL 538912, at *2 (S.D.N.Y. Aug. 27, 1997); see also In re Currency Conversion Fee Antitrust Litig., 229 F.R.D. 57, 60 (S.D.N.Y. 2005) ("[A] motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion.").

offered by Pioneer and this is not the place to repackage and relitigate arguments and issues already considered by this Court. See Gross, 2002 WL 32096592, at *4. Accordingly, Pioneer's motion on this ground is denied.

### D.  Similar Position Created in 2009

One additional point raised by Pioneer warrants discussion. In its original Decision and Order, this Court noted that Pioneer created a new position, similar to that of Daniels' old position, three years after Daniels' departure, and that it hired a considerably younger teacher to fill that position. This Court found that this fact may impair the tenability of Pioneer's claim that the restructuring was the result of budgetary concerns.

In disputing this finding, Pioneer argues that its decision was made in good faith and that the three-year gap removes any causal connection between the elimination of Daniels' position and the creation of a new position. But as noted by Daniels, Pioneer's authority for this proposition derives from the retaliation context. Here, of course, Daniels is not alleging that Pioneer retaliated against her for engaging in a protected activity. Contrastingly, Pioneer offers no authority for its proposition that, in the context of determining whether its budgetary explanation was pretextual, a three-year span is too long as a matter of law. Tellingly, Pioneer does not argue that its budget expanded, or that new funds became available in 2009. Whether the creation of this new and similar position, with its incumbent costs, undermines Pioneer's budgetary explanation is a question for the jury. Thus, this Court will not reverse its decision on this ground.

### IV. CONCLUSION

For the reasons discussed above, Pioneer's motion is denied.

**V. ORDERS**

IT HEREBY IS ORDERED, that Defendant's Motion for Reconsideration (Docket No. 51) is DENIED.

SO ORDERED.

Dated: April 20, 2012
      Buffalo, New York

                                                    <u>/s/William M. Skretny</u>
                                                    WILLIAM M. SKRETNY
                                                          Chief Judge
                                          United States District Court